All right, we're ready to hear argument in our second case today, in our last case of the week, at least for the three of us. Cason v. Maryland Division of Corrections. Mr. Weiss, whenever you're ready. May I remove my mask? Yes, you may. Thank you. If you're arguing, you may both remove your mask if you're inclined to do so. Thank you. Good morning, Your Honors. May it please the Court. My name is Samuel Weiss. I represent the appellant, Mr. Mark Cason. I'd like to reserve four minutes for rebuttal, which I see is already on the clock. Thank you. Mr. Cason has alleged a textbook disability discrimination claim under the ADA. He has alleged that he is handicapped and that a number of the services, programs, or activities of the prison where he was incarcerated are not handicap accessible. The District Court, or pardon me, the defendant did not move to dismiss his ADA claim. The District Court did it on its own accord without realizing to appear that it was doing so. It dismissed his claim in a single sentence providing two reasons. The first was that he had not identified any services, programs, or activities of the prison for which he was denied meaningful access. And the second was that this lack of meaningful access was not because of his disability. These two reasons are both plainly wrong. First of all, on service program or activity. I guess do we need to even get to those reasons? There seems there's some discussion in briefs about the relief. It doesn't seem like any of the relief is available to your client anymore. The equitable relief that there's no pleading of the support damages. And of course, we can't award good time credits. Right. I think the pleading certainly supports damages. So we can get into sovereign immunity now, Your Honor, if you would like. So I think in your brief you said that you agreed with the courts that have said there needs to be some evidence of intentional discrimination to support damages. So tell me more about the complaint, how it pleads evidence of at least deliberate indifference. Absolutely, Your Honor. So Mr. Cason plainly states a claim of deliberate indifference. In the context of the ADA, the standard for deliberate indifference is knowledge of a substantial likelihood of a violation of a federal right and then a failure to act upon that knowledge. But they acted on the knowledge. The Department of Corrections responded to his grievance a little over a month after he filed it. They conducted, had outside agencies conduct site assessments and found that some of his had plans in place to correct those. So how was that being deliberately indifferent? I think there's two points on that, Your Honor. The first is that we have absolutely no evidence whether any of that occurred. And that's why it was inappropriate to dismiss this one. And we don't have any pleading that it didn't occur. Well, that's true, Your Honor. Although I think resolving ambiguities in favor of the defendant and against an incarcerated pro se plaintiff on the Rule 12 stage is not an appropriate use of this procedural posture. Well, in any event, your client was moved from that prison in August. So he received a response in May saying, we're on it. We're going to fix this. He was moved from the prison in August. So, you know, we're speculating that nothing happened. Seems like maybe something did happen. They did try to fix it. But even if they didn't fix it by August, would that be deliberately indifferent? Well, for a couple of reasons, I believe the answer would be yes. Although deliberate indifference is a context-specific inquiry, it's typically not fit for resolution on Rule 12. And I don't think, Your Honor's characterization of that we have evidence that they took remedial measures is correct. I don't, there's no evidence in the case at all. There's only allegations. And, but, but a second point on this, which is that. But to Judge Rushing's point, there's also, speaking of allegations, there's no allegation in the complaint that it wasn't corrected. That's such that they were deliberately indifferent to Mr. Kaysen. That is, that is true, Your Honor. And if, if, if this court is inclined to resolve that ambiguity in favor of the defendant, I think there's one other very of deliberate indifference can also be inferred when a need is obvious. And here the need was obvious. It could not have been more obvious. So much so that the warden responded in a timely manner and, and agreed with Mr. Kaysen and was taking steps to correct all the various challenges that someone with a disability would face in that prison. Well, I, I would again say that we don't know if the warden, I, Your Honor, I think it would be a little perverse if we have an incarcerated pro se complaint saying this facility is not wheelchair accessible in all of these systematic ways. And if defendants were entitled to relief on Rule 12 because they agreed and wrote him back and said, yes, we agree. Is that what deliberate indifference means? Is that if they're not deliberately indifferent, that they're entitled to it? Well, yes, Your Honor. I, I do agree with that. And, and can I take, can I go take a step back here? Yeah, absolutely. On, on sovereign immunity, when we look at the Georgia case, it suggests that we've got to look on a claim by claim basis to see whether it's, you know, they've alleged sufficient plausible facts to, to violate Title II. Right. Do you agree that in that inquiry, you have to show deliberate indifference? Not exactly. So help me understand. Well, for the following reason, and I would like to get back to the point of obviousness at some point, but he, he has to state a claim under Title II of the ADA. Deliberate indifference is just a question of relief. So it's just a question of what remedies are available to him. So he needs to demonstrate deliberate indifference to obtain damages. And so this court could find, well, if your equitable reliefs are, if your equitable relief is moot, if there's no deliberate indifference, this court could hold that he is, that the claim is essentially moot. However, for purposes of sovereign immunity, that doesn't mean that he wouldn't have alleged a claim under Title II because deliberate indifference is not an limitation on relief. All right. So you seem to dance around that a little bit, but so at, at step one of the Georgia inquiry, right, as we sort of think about that, do, do you have to plausibly allege deliberate indifference? I, I think in, in this case, if the court, I, I don't mean to dance around it. If this court were to hold that his equitable claims are moot, yes, I think for that purpose. Although I, I, this is six of one, half dozen of the other. I think it would be properly characterized as him just failing to state a claim. All right. So, and then let me just make, because, because you haven't yet there and I want to ask, well, how could we find that his equitable claims are not moot? Well, I, I think it might be this, this court has a general rule that transfer does moot out equitable claims. I think barring unusual circumstances, the circumstances here are a little unusual. He's alleged that there are only two facilities in the entire state that hold people in, who are in wheelchairs. He's in one, he's not in the other. Again, this is why having some of these issues out in the district court would have been helpful. But, but I mean, we've got a rule, I guess what I'm trying to figure out is like, we have a rule that says transfer makes equitable claims moot. He was transferred. Is there, is there a case or a theory that you want us to consider? I mean, I understand your, your point is, I don't know, maybe, maybe he might end up back there because he's, there are only two, but like that doesn't get you there, right? Well, yes. Fair enough. I think it would be reasonable for this court to hold that it doesn't get us there. I also think it would be reasonable to hold that this is the sort of inquiry for the district court to take on in the first instance. Again, I think if we're remanding But you have to tell us what the district court could find or do that, that would allow it to find it moot, right? I mean, we, we remand when there's like a debate, right? I don't know, maybe it's moot, maybe it's not, maybe we remand. What I can't figure out is how possibly your equitable claims are not moot. Under current case law. Yeah. I, I think the current case law is that this claims could be an unusual circumstance. I think if the damages claim is going forward, it doesn't matter too much one way or the other because he very well could be transferred back. If you hold that that group claims are moot, he could amend his complaint. If he gets transferred back to Pursuit Run. Was he transferred to one, you said there were only two wheelchair accessible, so he was transferred to a wheelchair accessible facility? Yes. Okay. So that, that may also be another indication that the Department of Corrections was not deliberately indifferent. It, it could be, although again, deliberate indifference in terms of did they fail to act or did they act reasonably is typically a fact-specific inquiry. It's typically not fit for resolution on Rule 12. We, I, I don't think these, this kind of speculation being held against a prose plaintiff is consistent with the procedural posture that we're on. I would just like to make one point on obviousness, which is that Judge Richardson suggested or a couple of your honors have about, well, he files a grievance and then they do something about it. They didn't, they didn't know that the facility was not wheelchair compliant and then he filed a grievance and then, well, we don't actually know if they did something about it, but they said they did something about it and isn't that not deliberately indifferent? But it is obvious, not just plausible. Well, they did, they were, they, number one, they responded to him fairly promptly. Number two, they had a number of investigations of the facility to assess whether or not his claims had merit. Number three, they found that several of them did and number four, they had plans in place to correct those. They, they claimed that all that yes. Well, they claimed the court ministry, the first three are accurate. I, I don't know how we can say that on the Facebook. Well, I'm looking at the, they responded. Oh, sure, sure, sure. Yeah, yeah, yeah. Okay. Okay. So just to make a point on obviousness, there are two facilities in the Maryland Department of Corrections that house people who are incarcerated. Mr. Kaysen identified a series of structural deficits on the bathroom, the toilet, or pardon me, it's redundant, the bathroom, the shower, the recreation area, the visitation room. These were all structural, these were all structural problems that made it inaccessible to all people in wheelchairs. And this is a- I think, you know, you might, there might be a point to be made there that it could be perhaps so obvious, right? Like my clerk and I were talking about what if a doorway is not wide enough for a wheelchair to get through, right? Like maybe that is so obvious that you should know without anyone having to like give it a try and tell you. But the complaints here don't really strike us that way. There's a, you know, the table, like certainly it seems like the table height was not compliant or made it difficult or the thresholds, but none of these seem to be the sort of thing where we can say based on the pleadings that everyone should have known that this was out of compliance without anyone ever telling them. Yes. So on, on that, I would say it might be a little less intuitive to the average person like you or me that that is the case. Or like a warden. Or like a warden of one of the only two facilities that accepts people that is designated as a handicapped facility. Whether people who are entirely reliant on his care can safely use the toilet every day, whether they can safely shower every day, whether they can use the recreation yard, whether they can sit at the visitation tables. It is not only plausible, it is obvious that these, that these accommodations, and again, I think this would be a very different case. So do you think obviousness, I mean, you want to say it should be obvious to an expert in the field, right? But we don't think about obviousness in that way normally, right? We think about whether it's actually obvious, right? Not obvious to, you know, a compliance expert. Yes, Your Honor. So, because you seem to concede might not be obvious to the three of us. Yes. But if it's not obvious to the three of us, like in that sort of the standard that we're looking at, or at least, at least if we're representative of, of objectively reasonable people, which may or may not be true. I, I think that's not right, Your Honor. And I think so for the following reason, that deliberate indifference is about whether the defendant knew. And one way of knowing is through a grievance. And another way of knowing is because we are inferring that they knew from the obviousness. And here the defendant is the public entity. It's the Maryland Department of Corrections. As Mr. Kaysen actually noted in his grievance, there are regulations governing the structure of. Well, you're right. But again, I'm stuck thinking, well, how out of compliance was it, right? If there were an allegation that, you know, someone in a wheelchair literally could not use these toilets ever. Yeah. Right. So there's an allegation that this person never was able to use those facilities. Right. That suggests to me they're so out of compliance that it's obvious perhaps. But this is, this is not the, that's not what we have here. There's no, there's no sort of allegation along those lines that suggests that it would be so obvious to a warden without, you know, pulling out the tape measure. Yes. I, I understand that, Your Honor. I think one example that might be helpful, and this is at JA-19, is when he's talking about the shower. And, you know, a typical shower is not safe for somebody who is a partial quadriplegic to use. And he alleged that in his grievance, he said other housing units have grab bars. The warden cannot say that he doesn't know that I need this accommodation because the other housing units have them and they just have, they haven't installed them here. And so I do think that sort of accommodation, I do think to the warden of a purportedly wheelchair accessible facility, government. Didn't that assume his knowledge that they're not in there? Right. I mean, I, I don't know. I'm, I'm not a warden, right? So this is part of the trouble we have in evaluating these cases, but I'm not sure how often the warden spins in the shower in cell block C, right? I mean, my guess is like not a lot. Right. That's, that's fair. I, I'll quickly note that I, I've been using warden as a shorthand, but the Maryland Department of Corrections is the defendant. So if it's, it's the entity as a whole. And so. Right. But that's, that's again, back to the problem that you've got, right? Is you want to say, oh yeah, everybody, we're going to use everybody's eyeballs, but then I want you to say what is obvious to an expert warden, not to a normal person, right? I mean, what you can't do is combine those two things. I, I understand that inference, although of course prisons are hierarchical organizations and, and line staff report up problems up, up the chain to the people who. When they're obvious, they do. They do. And Your Honor, I would submit that the idea that, that partial quadriplegics cannot safely use a standard shower, which is why the other housing units have them, is, would it be obvious to line staff? It certainly would be incarcerated. It would be obvious to the incarcerated people as well as to the warden whose job is to oversee the prison and make sure that it's compliant with those sorts of regulations. I see I've used my time for rebuttal. Thank you. Thank you. We'll hear from Ms. Arnquist. Thank you very much. This court should affirm the lower court's dismissal of Mr. Cason's ADA claim because it fails to state a claim. The injunctive relief was clearly moot. That is established precedent in the Rendleman and Nkuma case. In this case, it was even more so because the, in the, in most of the cases that deal with transfer mooting, mooting a claim, there's a transfer that happens after the lawsuit was filed. In this case, Mr. Cason filed this lawsuit six months after he had already been moved out of Dorsey Run Correctional Facility. The claim for money damages is barred by the state's 11th Amendment immunity. To get to the questions that the court was addressing. Can you, oh, sorry. Go ahead. I am right in reading your brief that you are asserting sovereign immunity and requiring us to rule on it. It's not a conditional argument for you in any way. You don't have a backup argument on appeal. No, this is the argument. It is, it is the whole, so we have to reach that question. Yeah. I mean, that's the, well, actually, no, actually that's not true because the, the decision of the, of the lower court to dismiss it for failure to state a claim is also an alternative grounds. Right. So since you went to, straight to sovereign immunity, made me think that you were conceding that he stated a claim. No, I'm sorry. Okay. Maybe you could clear that up. The district court said, construed it liberally so much so that nobody else involved in the case even really saw it as an ADA claim. But the district court did look at it and said he failed to state a claim. It's clearly an ADA claim. Okay. So the district court looked at it and said it fails to state a claim because as discussed earlier, to be entitled to damages under the ADA, the, at a minimum, what has to be established is deliberate indifference. Actually, some circuits say intentional discrimination, but just giving, you know, the lower courts in this circuit have applied the deliberate indifference standard. And, and the facts as alleged in this case, they show the opposite. There's no deliberate indifference in this case. Mr. Cason brought some structural issues to the attention of the department and the department thanks him. And Ms., and the warden immediately brought capital construction out to do audits. All right. But before we get, before we get into the facts, this threshold question matters. So we have a case called Constantine. Yes. That, that says if you assert both sovereign immunity and a failure to state a claim, we must address sovereign immunity first, right? That we must address that first, unless your assertion of that is only conditional, right? And it sounds like to me, you're, when I read your brief, I read it as saying, no court, you must address sovereign immunity. Do I read it that way or, or, or you not? So we did this recently, Virginia sort of asserted sovereign immunity. And then after argument said, you don't have to address sovereign immunity if you don't want to. I'm just trying to understand, do we have to address sovereign immunity or are you asserting that as an, as a conditional argument? If there's a claim stated, then we have a backup argument of sovereign immunity. Does that make sense? Yes. I do understand. And the problem is they're so entwined because part of the analysis on the 11th amendment. I totally get it, but I'm asking a pretty formal question, right? Which is need, does the Commonwealth demand that we address sovereign immunity or is their argument on sovereign immunity a merely conditional one? It's conditional because on the, just on its face, this failed to state a claim under the ADA. Okay. And that's what the lower court found. If we ruled under 12B6 that the, that they failed to state a claim, the Commonwealth does not demand that we address sovereign immunity. You're going to be okay with that outcome? Yes. The, it did, it, it failed to state a claim. I'll start with that. It failed to state a claim. It has to, it has to meet at a minimum deliberate indifference. The facts as alleged are that Mr. Cason filed this complaint. There's nothing obvious at all about the allegations in, in, in this arc, in the, in the complaint. What's alleged is that there wasn't a shower handlebar, that the toilets were an inch too low. Right. And so the, the grab bar, that seems like a relatively easy fix, easy installment. I think I could install a grab bar, frankly. I don't have any doubt about it. It turns out it's not that easy. In a prison. Only one of the three of us that could, but. I think Judge Rushing might get one. All right. Two out of the three of us can. Anyway, so, so the warden responded in May, acknowledging that some of the claims were merit, had, had merit. And Mr. Cason was not transferred until three months later. And yet, the grab bar had not yet been installed by three months later? Well, we don't know, because again, that's not alleged in the complaint. What would have to be alleged is that I brought these to your attention, even if they rose to a constitutional violation or a significant violation. And what's missing from the factual allegations is, you responded and told me that you were going to correct it, and then you never did. You didn't take any action at all. So the deliberate, again, deliberate indifference, you can't reach a plausible case based on these facts. It's the opposite of deliberate indifference. But I'll take the court to the reason that the district court, the district court found that failed to state a claim for a different reason. And that was because Mr. Cason failed to allege that he had been denied participation in any service program or benefit. He did not. There's no allegation here that he was not able to shower. There's no allegation that he was not to engage in visitation or that he was able to participate in recreation. The allegations were, and since this is a reasonable accommodation claim, nor was there any allegation that he sought an accommodation or that no accommodation was made to allow him to participate in those programs. So under the plausibility standard- I mean, shouldn't, you're dealing with a pro se plaintiff and we're saying he's pointed out that there's a compliance problem and the prison agrees, but we're going to hold him to the standard of saying, well, you didn't say that you couldn't shower. You just said that it made it unsafe to shower. I mean, shouldn't he just be given ability to amend if that's the problem? Yes, but he never sought leave to amend. He has never sought leave to amend. Well, no one asked to dismiss this claim. It was dismissed before he knew that there was a problem with it. But he's not asking you, he's not before this court asking that you remand it so he can amend. He's asking the court to determine that the lower court erred in saying it failed to state a claim. Whether he could have properly amended if he had moved after the decision of the lower court to amend or said before this court, telegraphed or proffered some additional facts, that would be a different inquiry. But since the plaintiff has not sought leave to amend or even asked that you reverse so he could amend, I think the obvious assumption is that he's not able to assert he was not able to shower. He's not able to assert that he was not able to engage in visitation. The allegation is that the table was too low. And so he could engage in visitation with, you know, maybe he was two feet further away from his person he was visiting with. That's a far cry from saying you violated the ADA because I couldn't participate in your program, which is the program is visitation. The program is showering. The program is recreation. With regard to the weight pit, he is a paraplegic and what he's complaining about is not being able to go into one part of the prison and lift free weights. There's no accommodation made for him to be able to do that because he's just alleging that it was difficult to traverse. And I'm not trying to, you know, stand on ceremony here. I think this is really at the heart of what your questions were as to whether or not how significant a violation this was. And again, it's not, I don't, every violation is significant. I assert that. But in this case, when you're talking about, you know, an abrogation of the state's 11th Amendment immunity and subjecting the state to monetary damages for every violation of this nature, then it becomes a very significant inquiry. And so the district court found he didn't allege that he was denied participation in any program, service, or benefit. Even though there wasn't a grab bar there, he has not said he couldn't shower. And by contrast, the last time that this court looked at a case like this was the Faulkner versus Clark case. And that stands in contrast because in that case, the court found that there was a state, they had stated a claim because the inmate in that case said very specifically, I was denied participation in the jobs program. I was not allowed to participate in the jobs program. That case is also relevant to the 11th Amendment inquiry because the court found abrogation, but only because Mr. Faulkner had also stated a constitutional claim in his complaint. So I think that the lower court could be affirmed simply on the failure to state a claim under the deliberate indifference argument, and also under his failure to have identified what he was not able to do and whether an accommodation was denied to him. And on the 11th Amendment argument, this is not the type of conduct that is for which the ADA was congruent or proportional and a proper exercise of the courts, of the Congress's authority under Section 5 of the 14th Amendment. And that is because you compare the evil that's presented, and I'm not minimizing it, but the evil that's presented is the toilet was a little too low and I couldn't enjoy the shower, but not that you were unable to shower or that you were unable to toilet. And then you weigh on the other side of that, the longstanding deference that the courts owe towards the states in running their state penal systems. And when you apply those in that balancing test, this cannot be a proper abrogation of the state's 11th Amendment immunity under the facts of this case. I have further questions. All right. Thank you. We understand your argument, Mr. Enquist. Mr. Weiss, you have some time reserved. Good morning, I would just note, I believe that Mr. Kaysen has identified program services or activities that he was not able to meaningfully access. As Judge Rushing noted, it's not impossibility of access, it's meaningful access. So things like unsafe access are not meaningful access. He says, I suffered on JA-8 because of the wheelchair and accessibility. I suffered because of the conditions of the shower. He says that... Is that, I mean, you know, to sort of get to the sort of, you know, Twombly Iqbal, like that seems to be the conclusion, not the like facts, right? Right. If he said, you know, I'm only able to get in the shower by taking these steps or it creates this danger. But part of the trouble, I'm not sure we have to get to this, is the sort of conclusory sort of nature of how he's denied access. I don't think it would be sufficient to just say I was denied access without helping us understand how. And to say, I suffered as a result seems similarly conclusory. I understand that concern. I think certainly on its own, it would not be sufficient. But what he's done is I'm calling out these few, calling up these few brief moments because they are the times that he makes explicit, which is what is obvious, which is that he alleges that he is a partial quadriplegic and is in a wheelchair. And he alleges that there are all these ways that the facility is wheelchair inaccessible. And so if this were a case of something like some sort of individualized, you know, were he to say lots of prisoners don't get hearing aids and also I'm hard of hearing, that would miss a key part here, which is, you know, what about you specifically? What he's alleged is that he's in a wheelchair and that the facility structurally in all of these different ways, it's not different on Monday than it is on Tuesday. The tables are the same height. The showers have grab bars or they don't. That he has suffered because of that inaccessibility. So it's true that in some ways, involving himself is, is conclusory in that respect, but it ties into where he goes. So, you know, on, on, on that allegation, it's, it's brief, but it ties into him later saying the showers, they don't have seats. They don't have hoses. They don't have, is this the statement of facts that you're talking about? So he makes the complaint, he has the statement of facts. Yeah. I'm listing the statement of facts in his grievance, which he attached, which is at JA 18. He lists a number of ways that the shower is not accessible. Well, but in the, in the court, at least he says there is a wheelchair shower and it has a seat and it has handrails, but they're quote inadequate, but for reasons that aren't clear, right? And the same thing with the, with the toilet, right? He says there's a wheelchair toilet, doesn't say exactly what it means. And it doesn't have proper railings, which I interpret I mean, it has railings. They're just not the ones that he thinks are required. Yes. So, so you just keep saying there are no railings. There are no seats. None of this is there. But when I look at, I'm not sure I can consider it to be fair, but like this statement of facts before the district court. Are you referring to his initial complaint that was superseded by his amended complaint? I don't think it was an amended complaint. I think there's just like a response that's a statement of facts. Oh, okay. Okay. Thank you, your honor. Sorry. I was confused there. So I, I think there is nonetheless, you know, he only needs to identify a single service. I think he's identified several, but if, even if something like the weight pit, he says I was unsafe, the failure of accommodation was unsafe for me in the weight pit, that would be enough to state a claim. And I, I would just briefly say that, you know, some of these issues that we've discussed about, you know, what exactly did they know? Who knew it? When did they know? When did they actually act? These are proper determinations for the district court to make in the first instance. What we have here is a pro se complaint that is not as sophisticated as if it was written by an attorney, but it's sufficient to state a Title 288 claim. All right. Thank you, your honor. Thank you, Mr. White. And thank you both for your arguments today and the work you do every day. We wish you safe and happy travels back up I-95. Thank you very much. We'll ask the court to adjourn court. This honorable court stands adjourned. Sinead Agassi, United States and this honorable court.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing